IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMIE L. STEWART,

       *Plaintiff*,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       *Defendant*.

Case No. 14-1027-EFM

**MEMORANDUM AND ORDER**

Plaintiff Jamie L. Stewart seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income, under Title II and Title XVI of the Social Security Act (the "Act"), respectively. In her pleadings, Plaintiff alleges that the administrative law judge ("ALJ") erred by not recontacting one of Plaintiff's treating physicians and in assessing Plaintiff's residual functional capacity ("RFC"). Upon review, the Court finds that the Commissioner's decision was supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

## I.      Factual and Procedural Background

Plaintiff was born on July 2, 1982.  She has a twelfth grade special education, during which she earned primarily passing grades.  Plaintiff previously worked as a home health aide and a fast-food worker at Subway and McDonald's.  Plaintiff worked at McDonald's on two different occasions—from September 1, 2005, to October 15, 2005, and from February 23, 2007, to March 31, 2008.

The record contains several reports from Plaintiff's former employers and vocational rehabilitation counselor regarding Plaintiff's past employment.  Sheila Burke, Plaintiff's employer when she worked as a home health aide, reported that Plaintiff was easily distracted and did not complete tasks as directed.  She also reported that Plaintiff needed extra supervision to perform her job adequately.  Both of Plaintiff's McDonald's employers, however, reported that Plaintiff did not have difficulties performing her job.  Plaintiff's vocational rehabilitation counselor, Kenny Foust, noted that Plaintiff's attempt to work fast-food failed despite management moving her to less demanding positions.  He recalled that Plaintiff could not remember how to make Subway sandwiches even though she was given additional time and assistance.  He stated that Plaintiff was able to work at McDonald's because she had an understanding and accommodating manager.

Dr. Michael Schwartz, a consultative psychologist, examined Plaintiff in November 2006. He administered the Wechsler Adult Intelligence Scale I ("Wechsler"), third edition, and the results revealed a verbal intelligence quotient ("IQ") of sixty-five, a performance IQ of seventy-three, and a full scale IQ of sixty-five, indicating a mildly mentally retarded range of intellectual functioning.  Dr. Schwartz concluded that Plaintiff could remember work locations

and procedures; understand and follow simple directions; and attend, concentrate, and remember adequately to perform simple tasks.

Dr. Thomas Coleman, a consultative licensed clinical psychologist, examined Plaintiff in November 2009. His examination revealed that Plaintiff had somewhat limited concentration and the demeanor and interaction of a young teenager, but also logical thoughts and the absence of articulation difficulty. Dr. Coleman concluded that Plaintiff was immature in judgment, intellectually limited, and vulnerable to misuse or manipulation, but she could follow simple instructions and carry out simple tasks in a sheltered environment with close supervision.

On December 31, 2009, Dr. Robert Blum, a state agency psychologist, reviewed the evidence in Plaintiff's file and issued a report assessing Plaintiff's mental capabilities. Dr. Blum determined that Plaintiff could understand and remember simple instructions; could attend to and complete intermediate tasks; and was capable of getting along with co-workers and supervisors. He also determined that Plaintiff was capable of competitive employment.

Dr. Marie Shields, a psychological provider associated with Pawnee Mental Health Services, examined Plaintiff in May 2010 and conducted abbreviated Wechsler testing. Her examination revealed a verbal IQ of fifty-seven, a performance IQ of sixty-nine, and a full-scale IQ in the moderate mental retardation range. Dr. Shields determined that a diagnosis of mild mental retardation was valid based on her diagnostic interview, formal testing, and Plaintiff's history. Dr. Shields concluded that, based on her testing, Plaintiff would not be able to live successfully on her own or provide for the needs of her infant child. She opined that Plaintiff's ability to obtain gainful employment was highly questionable.

Plaintiff filed applications for disability insurance benefits and supplemental security income on September 16, 2009, under a protective filing date of September 9, 2009. She was

twenty-eight years old as of June 30, 2011, the date she was last insured for purposes of disability insurance benefits, and thirty years old as of July 20, 2012, the date of the Commissioner's final administrative decision for purposes of supplemental security income.

The state agency and the Social Security Administration denied Plaintiff's applications initially and upon reconsideration. Pursuant to Plaintiff's request, an ALJ conducted a hearing on October 20, 2010, at which Plaintiff and her counsel appeared, as well as a vocational expert. The ALJ issued a decision on November 24, 2010, finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council granted Plaintiff's request for review of the decision and remanded the case to the ALJ on August 12, 2011.

The ALJ held a supplemental hearing on June 25, 2012. During the hearing, Plaintiff testified that she had special education services and that she could write and make change. She also testified that she previously worked at a McDonald's fast-food restaurant, cleaning and cooking, including operating a grill and fryer. According to Plaintiff, it only took her a couple of days to learn how to operate the grill because she was good with handling food and could cook. She stated that she received close supervision on the grill until she "got the hang of it" and that the job ended because of a conflict with her manager.[1] She further testified that she took care of her daughter by herself for about three hours a day but that her parents also supervised her care of her child and helped with dressing, feeding, and changing her child. Plaintiff stated that she goes out by herself to "hang out with friends," and she can care for herself with difficulty.[2] She

---

[1] Oral Hearing Transcript, Doc. 9-3, p. 65.

[2] Oral Hearing Transcript, Doc. 9-3, p. 61.

also testified that when she lived alone at age eighteen for a brief time, she stayed with friends and "partied a lot and ended up in jail."[3]

The ALJ issued her decision on July 20, 2012, finding that Plaintiff suffered from the severe impairment of mild mental retardation. Despite this finding, the ALJ determined that Plaintiff's impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. More specifically, the ALJ determined that Plaintiff failed to meet either Listing 12.02 for organic brain disorders or Listing 12.05 for mental retardation. The ALJ concluded that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: (1) work involving simple, routine, and repetitive tasks and (2) occasional interaction with the public and coworkers. The ALJ therefore concluded that Plaintiff had not been under a disability since January 1, 2006, through the date of her decision.

Given this unfavorable result, Plaintiff sought reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Plaintiff's request for review on November 21, 2013. Plaintiff filed a complaint in the United States District Court, District of Kansas on January 20, 2014, seeking reversal of the ALJ's decision and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given Plaintiff's exhaustion of all administrative remedies, her claim is now ripe for review before this Court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner as to any fact, if supported by

---

[3] Oral Hearing Transcript, Doc. 9-3, p. 59.

substantial evidence, shall be conclusive."[4] The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[5] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[6] The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[7]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[8] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[9]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[10] The steps are

---

[4] 42 U.S.C. § 405(g).

[5] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[6] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[7] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[8] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

[10] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[11]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[12] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[13]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[14] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[15] The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant could perform other work in the national economy.[16]

---

[11] *Barkley*, 2010 WL 3001753 at *2.

[12] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753 at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[13] *Barkley*, 2010 WL 3001753 at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), and 416.945.

[14] *Barkley*, 2010 WL 3001753 at *2 (citing *Williams*, 844 F.2d at 751).

[15] *Lax*, 489 F.3d at 1084.

[16] *Id*.

### III. Analysis

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ erred (1) by not recontacting Dr. Shields to clarify her credentials and (2) in assessing an RFC that does not include all of Plaintiff's limitations. The Court will address Plaintiff's arguments below.

#### A. Recontacting a Treating Physician

Plaintiff argues that the ALJ erred in dismissing Dr. Shields's IQ test scores and that she actually met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B) regarding mental retardation.[17] In her decision, the ALJ found Dr. Shields's test scores invalid in part because the record did not adequately state Dr. Shields's qualifications. The ALJ noted that while Dr. Shields's report lists her as "a psychologist," there was "no signature or other indicia of her skills and qualifications."[18]

Plaintiff contends that the ALJ had a duty to recontact Dr. Shields to clarify her credentials. Plaintiff relies on two decisions from the Tenth Circuit in support of her argument—*White v. Barnhart*[19] and *Robinson v. Barnhart*.[20] These decisions, however, interpreted the former 20 C.F.R. § 416.912(e), which required the ALJ to recontact a treating physician in certain circumstances.[21] 20 C.F.R. §416.912(e) was amended in February 2012 and not in effect

---

[17] 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05(B) requires a valid verbal, performance, or a full scale IQ of fifty-nine or less. Based on her testing, Shields concluded that Plaintiff had a verbal IQ of fifty-seven, a performance IQ of sixty, and an unknown full scale IQ, presumably under sixty based on evidence showing "moderate mental retardation." *See* ALJ Decision, Doc. 9-3, p. 18.

[18] ALJ Decision, Doc. 9-3, p. 18.

[19] 287 F.3d 903 (10th Cir. 2001).

[20] 366 F.3d 1078 (10th Cir. 2004).

[21] *White*, 287 F.3d at 908-09; *Robinson*, 366 F.3d at 1084.

Case 6:14-cv-01027-EFM   Document 12   Filed 10/22/14   Page 9 of 14

at the time of the ALJ's decision in this case. The regulations governing the ALJ's decision here are 20 C.F.R. § 404.1520b(c) and 20 C.F.R. § 416.920b(c). They provide that: "[i]f the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency."[22] These regulations give the ALJ much more flexibility and discretion in deciding whether to contact a treating source than the former 20 C.F.R. § 416.912(e).[23]

Applying 20 C.F.R. §§ 404.1520b and 416.920b here, the Court finds that the ALJ did not err by not recontacting Dr. Shields to clarify her credentials. The medical record contains sufficient information for the ALJ to determine whether Plaintiff was disabled. The ALJ obtained two consultative examinations in this case to fulfill her duty to develop the record. Dr. Schwartz performed the first exam in November 2006 and his test results revealed that Plaintiff had a verbal IQ of sixty-five, a performance IQ of seventy-three, and a full-scale IQ of sixty-five. He concluded that Plaintiff could remember work locations and procedures; understand and follow simple directions; and attend, concentrate, and remember to perform simple tasks. Dr. Coleman examined Plaintiff in November 2009. He concluded that Stewart presented as a girl with mild mental retardation, which was consistent with Dr. Schwartz's IQ test results.

Plaintiff's argument that the ALJ should have recontacted Dr. Shields is primarily based on the disparity in Dr. Schwartz's and Dr. Shield's IQ scores.[24] This disparity, however, is the

---

[22] 20 C.F.R. §§ 404.1520b(c) and 416.920b(c).

[23] *Hennessy v. Colvin*, 2014 WL 1356062, at *6 (D. Kan. Apr. 7, 2014).

[24] As previously noted, if the ALJ had given Shields's test scores more weight, Plaintiff would have met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B), and her impairment would have met or equaled one of the designated impairments.

ALJ's duty to resolve,[25] and it does not mean that the ALJ did not have sufficient evidence to determine whether Plaintiff was disabled. Dr. Schwartz's, Dr. Coleman's, and Dr. Blum's findings, as well as Plaintiff's testimony and employers' reports, are sufficient evidence for the ALJ to determine that Plaintiff was not disabled. Therefore, the Court finds that the ALJ was not required to recontact Dr. Shields.

Even if the ALJ had recontacted Dr. Shields to clarify her credentials, the ALJ properly discounted Dr. Shields's opinion. In her decision, the ALJ noted that Dr. Shields's report did not state whether she performed a full Weschler examination. Specifically, the ALJ noted that the record did not indicate whether Dr. Shields performed a full WAIS-III or WAIS-IV examination. The ALJ further noted that Dr. Shields's test results were inconsistent with Plaintiff's work activity and daily activities. Therefore, the ALJ gave more weight to Dr. Schwartz's examination and evaluation.

Plaintiff argues that had the ALJ clarified Dr. Shields's credentials and found that she was a psychologist, Dr. Shields's opinion would be entitled to more weight because Dr. Shields was "an acceptable medical source"[26] and thus a treating physician. This argument, however, is not persuasive. One of the factors that the ALJ looks at in assessing a treating source's opinion is the length of the treatment relationship and the frequency of examination.[27] Generally, the longer and more frequently a treating source has seen a claimant, the more weight the ALJ will

---

[25] *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (stating that the trier of fact has a duty to resolve conflicting medical evidence).

[26] 20 C.F.R. §§ 404.1513 and 416.913.

[27] 20 C.F.R. §§ 404.1527(c)(2)(i) and 416.927(c)(2)(i).

give to the source's medical opinion.[28] Here, Plaintiff saw Dr. Shields once. Thus, the ALJ was not required to give her opinion more weight simply because she was a treating physician.

Plaintiff also objects to the ALJ's dismissal of Dr. Shields's test results on the basis that the form did not indicate whether a full WAIS-III or WAIS-IV test was performed. Plaintiff claims that 20 C.F.R. § 12.00(D)(6) does not endorse a particular IQ test. However, the ALJ's decision does not criticize the test Dr. Shields used but the fact that she did not indicate whether she performed the entire test. Furthermore, § 12.00(D)(6) states that IQ measures that are wide in scope are preferred.[29] Therefore, the Court finds that the ALJ did not err in her analysis of Dr. Shields's test results and her decision to give more weight to Dr. Schwartz's test results.

### B. RFC Assessment

Plaintiff also contends that the ALJ erred in formulating her RFC. As noted above, the ALJ found that Plaintiff has the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work involving simple, routine and repetitive tasks. Additionally, the claimant may tolerate occasional interaction with the public and coworkers."[30] According to Plaintiff, this RFC should have also included the limitation that she required extra supervision to perform competitive work.

"Residual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[31] Although an ALJ is not an acceptable medical source qualified to render a medical opinion, it is "the ALJ, not a

---

[28] *Id.*

[29] 20 C.F.R. § 12.00(D)(6)(d).

[30] ALJ Decision, Doc. 9-3, pp. 18-19.

[31] *White*, 287 F.3d at 906 n.2 (citing 20 C.F.R. § 416.945(a), (b), (c)); *see also* 20 C.F.R. §414.1545(a), (b), (c).

physician, [who] is charged with determining a claimant's RFC from the medical record."[32] "And the ALJ's RFC assessment is an administrative, rather than a medical determination."[33] Because an RFC assessment is based on "all of the evidence in the record, not only the medical evidence, . . . [it] is well within the province of the ALJ."[34]

Plaintiff relies on the opinions of Dr. Coleman, Foust, and Burke—all of whom opined that Plaintiff would require extra supervision in a competitive work environment—in arguing that the ALJ erred in her RFC assessment. The ALJ addressed each of these opinions in her decision. With regard to Dr. Coleman's opinion, the ALJ stated that she did not adopt Dr. Coleman's finding that Plaintiff required a sheltered environment with close supervision because it was inconsistent with Plaintiff's testimony and the reports of her previous employers at McDonald's. With regard to Foust's opinion, the ALJ first noted that Foust was a vocational counselor, and thus, not a licensed physician or acceptable medical source. She then dismissed his finding that Plaintiff could not perform substantial gainful activity because (1) that is an issue strictly reserved for the Commissioner and (2) his finding is inconsistent with Plaintiff's former employers' reports. And with regard to Burke's opinion, the ALJ noted that Plaintiff's work as a home health aide was performed within the confines of a patient's home and thus contained limited structure comparable to a normal work environment outside of a person's home.

The Court finds that substantial evidence supports the ALJ's decision not to include the extra supervision limitation in her RFC assessment. The Court agrees with the ALJ that

---

[32] *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citing 20 C.F.R. § 416.927(e)(2); SSR 96-5p, 1996 WL 374183, at *5 (July 1996)); *see also* 20 C.F.R. § 404.1527(e)(2).

[33] *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 1996)).

[34] *Dixon v. Apfel*, 1999 WL 651389, at *2 (10th Cir. Aug. 26 1999).

Plaintiff's hearing testimony and former employers' reports are inconsistent with Dr. Coleman's extra supervision limitation. Plaintiff testified that she could do all of the jobs at McDonald's, including operating the cash registers, fryers, and grill. She stated that she only received close supervision until she learned how to operate the grill, which only took a couple of days because she was good with handling food and could cook. She also reported that she had adequate concentration and only occasional memory difficulty, that she was never reprimanded for not working at the same pace as others, and that she did not need to be reminded to go to work.

Similarly, Plaintiff's former employers from McDonald's reported that Plaintiff performed regular crew duties; had no limitations or impairments in the ability to perform her job duties; had no problem understanding or following directions; performed her expected duties in a timely and satisfactory manner; had no problem getting along with co-workers, supervisors, or the public; stayed on the assigned job with ordinary supervision; and was able to concentrate adequately and learn new tasks within an adequate timeframe. Both employers also indicated that Plaintiff was not given special consideration and that she voluntarily discontinued her employment.

The Court also finds Plaintiff's reliance on Foust's and Burke's opinions unpersuasive. As the ALJ noted, Foust relied upon a characterization of Plaintiff's jobs at McDonald's as accommodated. He did not, however, provide any evidence of accommodation, and both McDonald's employers reported that Plaintiff worked without accommodation or subsidy. Furthermore, although Plaintiff did not perform to Burke's standards as a home health aide, Burke indicated that Plaintiff's termination of employment was voluntary and that she would hire Plaintiff again. Burke's opinion also does not discount the fact that Plaintiff adequately

performed her McDonald's jobs.  Therefore, the Court finds that substantial evidence supports the ALJ's RFC formulation.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 22nd day of October, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE